

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 24, 1992

Mr. Lionel R. Meno
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. DM-143

Re: Whether the Proprietary School Tuition Protection Fund as created by Texas Education Code section 32.91 manifests sufficient characteristics of a trust to require interest from the fund to be credited to the Tuition Protection Fund rather than the General Revenue Fund (RQ-309)

Dear Commissioner Meno:

You have asked our opinion about the proper disposition of interest generated by the Proprietary School Tuition Protection Fund (the "fund"). As a threshold matter, your question requires us to determine whether the fund is a trust fund within the state's general revenue fund. We conclude that the fund is not a trust fund, and thus that interest on the fund should be credited to the general revenue fund.

Section 32.91(a) of the Education Code creates the fund, which is "a special fund in the state treasury." Under section 32.91(a), the fund is financed with a fee the State Board of Education (the "board") collects from each proprietary school.[1]

---

[1]The Texas Proprietary School Act, Education Code chapter 32, defines "proprietary school" as follows:

> any business enterprise operated for a profit, or on a nonprofit basis, which maintains a place of business within the State of Texas, or solicits business within the State of Texas, and which is not specifically exempted by [§ 32.12] and; [*sic*]
>
> (A) which offers or maintains a course or courses of instruction or study; or

*See* Educ. Code § 32.91(b) (describing how board shall calculate amount of fee); *id.* § 32.71 (providing for certificate and registration fees); *see also* 19 T.A.C. § 69.128 (describing how board shall calculate amount of fee). The board assessed fees in an amount to bring the balance of the fund to $250,000 by January 1, 1992. Educ. Code § 32.91(b). After January 1, 1992, the board must collect fees during any year in which the fund balance falls below $200,000. *Id.* § 32.91(c). Significantly, section 32.91(d) states that "[t]he state treasurer shall invest the fund in the same manner as other state funds."

Monies from the fund are to be used for various expenditures that accrue upon the closing of a proprietary school. When a proprietary school closes, the Central Education Agency (the "agency") is to attempt to arrange for students of the closed school to attend another proprietary school. *Id.* § 32.92(a); *see id.* § 32.21 (defining general powers and duties of the Central Education Agency). The fund assists the agency in placing students of the closed school in two ways. First, the agency must use the fund to refund tuition and fees to those students whom the agency cannot place in other proprietary schools, or who refuse available, reasonable places in other proprietary schools. *Id.* § 32.92(c), (d); *see id.* § 32.39(b) (stating mandated refund policy for unused portion of tuition and fees); *id.* § 32.39(d) (stating required refund policy for students who refuse places in other proprietary schools); 19 T.A.C. § 69.127(b)(5) (stating required cancellation and refund policy). Second, the agency must use the fund to reimburse proprietary schools that accept students from a closed proprietary school pursuant to section 32.92 for all expenses directly related to completing the training of students who attend the school because of the closure. Educ. Code § 32.92(b).

You advise that "[c]urrently, the interest earned by the fund is credited to the General Revenue Fund in accordance with Section 3.042(a) of Article 4393-1, V.T.C.S., as a normal statutory account." On behalf of the Texas Education Agency,

---

(footnote continued)

    (B) at which place of business such a course or courses of instruction or study is available through classroom instruction or by correspondence, or both, to a person or persons for the purpose of training or preparing the person for a field of endeavor in a business, trade, technical, or industrial occupation, or for avocational or personal improvement, except as hereinafter excluded.

Educ. Code § 32.11(1); *see also* 19 T.A.C. § 69.122. *See generally* 19 T.A.C. ch. 69, subch. E (establishing minimum standards for operation of proprietary schools).

you contend that the interest on the fund should be credited to the fund, not to the general revenue fund. Initially, we note that the legislature has repealed V.T.C.S. article 4393-1, section 3.042 (*see* Acts 1987, 70th Leg., ch. 147, § 6(a); Acts 1989, 71st Leg., ch. 4, § 2.07(b)), codifying the text as section 404.071 of the Government Code.

Section 404.071(a) states as follows:

> (a) Interest received from investments of money in funds and accounts in the charge of the treasurer shall be allocated on a monthly basis as follows:

>> (1) the pro rata portion of the interest received due to each constitutional fund shall be credited to that fund; and

>> (2) the remainder of the interest received, except the portion required by other statutes to be credited on a pro rata basis to protested payments, shall be credited to the general revenue fund.

Section 404.071(a) distinguishes between two types of funds: those that are constitutionally dedicated (*see* Gov't Code § 404.071(a)(1)),[2] and those that are

---

[2]Article VIII, § 7 of the Texas Constitution provides as follows:

> The Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury; and shall make it penal for any person or persons to borrow, withhold or in any manner to divert from its purpose any special fund, or any part thereof.

This constitutional provision has been construed to require that interest on constitutionally dedicated funds be spent only for the purposes for which the funds were created; a diversion of such interest to other purposes would violate the constitution. *Lawson v. Baker*, 220 S.W. 260, 272 (Tex. Civ. App.--Austin 1920, writ ref'd); Attorney General Opinion JM-549 (1986) at 1. Consequently, interest earned on a constitutional fund must be credited to that fund, unless the constitution directs otherwise. Attorney General Opinion JM-549 at 1. On the other hand, the interest on state funds dedicated by statute legally may be severed and placed in the general revenue fund. *Id.; see Gulf Ins. Co. v. James*, 185 S.W.2d 966, 971 (Tex. 1945); *Brazos River Conservation & Reclamation Dist. v. McCraw*, 91 S.W.2d 665, 674 (Tex. 1936). Section 404.071(a) of the Government Code effects such a severance of interest on statutory funds as a general rule. *See* Attorney General Opinion JM-549 at 2 (discussing V.T.C.S. article 2543d, immediate predecessor to V.T.C.S. article 4393-1, § 3.042(a), now codified as Government Code § 404.071(a)).

statutory funds (*see id.* § 404.071(a)(2)). *See* Attorney General Opinions JM-549 at 2, JM-539 at 3-4 (1986). The funds about which you are concerned are statutory funds. Ordinarily, therefore, section 404.071(a) would require the interest on such funds to be credited to the general revenue fund. *See* Attorney General Opinions JM-549 at 2, JM-539 at 4. However, numerous prior opinions have stated that section 404.071(a)'s predecessors -- which are substantially the same as section 404.071(a) -- did not apply to the disposition of interest earned by the deposit of trust funds. *See, e.g., id.*; JM-306 at 2, JM-300 at 2 (1985); MW-338 (1981) at 2; MW-82 (1979) at 1; H-1040 (1977) at 1-2. With regard to trust funds, the interest becomes part of the principal and, consequently, part of the fund that generated the interest. Attorney General Opinions JM-549 at 2; JM-539 at 4; JM-306 at 2.

To be characterized as trust funds, "the funds in question should reflect, among other things, (1) that they are administered by a trustee or trustees, (2) that the funds neither are granted to the state in its sovereign capacity nor collected for the general operation of state government, and (3) that they are to be spent and invested for specific, limited purposes and for the benefit of a specific group of individuals." Attorney General Opinions JM-549 at 3; JM-539 at 4; JM-300 at 2; *see also* Attorney General Opinion JM-632 (1987) at 2 (discussing disposition of interest on county trust funds). In previous opinions concluding that a trustee or trustees administered the funds in question, thereby satisfying the first prong of the trust fund test, this office has relied on express statutory provisions requiring administration by a trustee, trustees, or any public officer "in trust." *See, e.g.,* Attorney General Opinions JM-539 at 4; JM-306 at 1-2; JM-300 at 2; MW-82 at 2; H-1040 at 2. *Compare* Attorney General Opinions JM-632 at 2; JM-549 at 5. Here, however, we find no provision in the statute expressly providing that the state treasurer shall hold these particular funds in trust or act as a trustee. Indeed, section 32.91(d) of the Education Code specifies that "[t]he state treasurer shall invest the fund in the same manner as other state funds." Thus, with regard to the fund, the state treasurer is charged with no duty beyond his or her duty as to other state funds. Accordingly, we conclude that the fund is not a trust fund and that therefore, it is subject to section 404.071(a) of the Government Code. Interest accruing on the fund must be credited to the general revenue fund.

## S U M M A R Y

The Proprietary School Tuition Protection Fund, created pursuant to section 32.91 of the Education Code, is not a trust fund. Consequently, interest that accrues on the fund must be credited to the general revenue fund pursuant to section 404.071(a) of the Government Code.

Very truly yours,

**DAN MORALES**
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General